UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

EASTON PAUL PARFAIT                    CIVIL ACTION NO. 6:12-cv-02077

VERSUS                                 JUDGE DOHERTY

CAROLYN W. COLVIN,                     MAGISTRATE JUDGE HANNA
COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION

## REPORT  AND  RECOMMENDATION

Before this Court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable

law, it is recommended that the Commissioner's decision be AFFIRMED and this

matter be DISMISSED WITH PREJUDICE.

### BACKGROUND

The claimant, Easton Paul Parfait, was born on April 6, 1958.[1]  He has a tenth

grade education.[2]  Before 1987, he worked in the oilfield, but sustained a back injury

that necessitated surgery.[3]  He returned to work and worked from approximately 1994

---

[1]      Rec. Doc. 5-1 at 96.

[2]      Rec. Doc. 5-1 at 145.

[3]      Rec. Doc. 5-1 at 210.

to 1999 as a carpenter building metal buildings used in the oil industry.[4]  From 2000 until 2008 and then again from 2008 until October 2009, he worked as a delivery driver, delivering seafood to restaurants and grocery stores.[5]  For some part of 2008, he work performing maintenance on equipment.[6]

On January 28, 2010, at the age of fifty-one, he applied for disability insurance benefits, alleging a disability onset date of October 21, 2009.[7]  A contemporaneous disability report indicates that the conditions allegedly limiting his ability to work are back and neck injuries.[8]

In June 2010, a determination was made that Mr. Parfait is not disabled.[9]  He then requested a hearing,[10] which was held on January 11, 2011 before Administrative Law Judge ("ALJ") David R. Gutierrez.[11]

---

[4]    Rec. Doc. 5-1 at 124, 129-130.

[5]    Rec. Doc. 5-1 at 124-126, 128.

[6]    Rec. Doc. 5-1 at 124, 127.

[7]    Rec. Doc. 5-1 at 96.

[8]    Rec. Doc. 5-1 at 144.

[9]    Rec. Doc. 5-1 at 42.

[10]    Rec. Doc. 5-1 at 61.

[11]    A transcript of the hearing is found in the record at Rec. Doc. 5-1 at 22-41.

The ALJ issued an unfavorable ruling on February 22, 2011.[12]  Mr. Parfait requested review by the Appeals Council,[13] but the Appeals Council denied his request.[14]  Therefore, the ALJ's ruling is the Commissioner's final decision.  In August 2012, Mr. Parfait instituted this lawsuit, seeking judicial review of the Commissioner's adverse decision.[15]  Mr. Parfait now argues that the Commissioner erred in failing to find that he is disabled because of chronic pain.

On May 13, 1987, Mr. Parfait underwent anterior lumbar fusion surgery at L4-5 following a workplace accident that left him with back pain radiating into his left leg.[16]  His surgeon noted that Mr. Parfait had "serious psychological problems which complicated his rehabilitation."[17]  Studies performed about a month after the surgery showed a known segmentation anomaly with transitional L5 vertebra as well as a left paracentral disc protrusion slightly larger than on pre-surgery studies, which

---

[12]     Rec. Doc. 5-1 at 14-20.

[13]     Rec. Doc. 5-1 at 9.

[14]     Rec. Doc. 5-1 at 4.

[15]     Rec. Doc. 1.

[16]     Rec. Doc. 5-1 at 234.

[17]     Rec. Doc. 5-1 at 234.

according to the doctor interpreting the study, "may represent a progression of disc protrusion at the 4/5 interspace."[18]

Mr. Parfait returned to work following the 1987 surgery.  In October 2009, however, he allegedly fell while delivering seafood, and in his words, "I felt I'd pulled something."[19]  Inconsistently, he told the ER doctor at LSU in Shreveport that the October 2009 back injury resulted from his having lifted a freezer multiple times.[20]

On November 15, 2009, Mr. Parfait was seen in the emergency department at University Medical Center in Lafayette, Louisiana, complaining of back and neck pain following a slip and fall accident approximately one month earlier.[21]  He also claimed to be suffering from anxiety.  X-rays of Mr. Parfait's cervical spine, taken that day, showed mild retrolisthesis and disc space narrowing at C3-4.[22]  X-rays of his lumbar spine, taken the same day, showed moderate scoliosis, postoperative changes

---

[18]     Rec. Doc. 5-1 at 239.

[19]     Rec. Doc. 5-1 at 30.

[20]     Rec. Doc. 5-1 at 198.

[21]     Rec. Doc. 5-1 at 178.

[22]     Rec. Doc. 5-1 at 176.

a L5-S1, and degenerative disc disease at L4-5.[23]  He was given an injection of Toradol for pain and prescribed Lortab and Soma.

Two days later, he was seen in the emergency department at Louisiana State University Health Sciences Center in Shreveport, Louisiana, complaining of neck and back pain.[24]  The treatment notes indicate that he had diffuse pain to palpation of the cervical, thoracic, and lumbar midline spine and all paraspinous muscle regions, but a negative straight leg raise test, no pain to his hips with internal or external rotation, no difficulty with heel/toe standing, but difficulty with standing and walking on his heels and toes due to pain.  He had good muscle tone, normal deep tendon reflexes, his senses were intact, and his strength was rated at 5/5 in all extremities.  He was diagnosed with back and neck pain with radiculopathy, muscle strain, and disc herniation.  He was prescribed Lortab and Clinoril.  He also reported that his "[p]ain is eased slightly with lortab and soma."

On December 22, 2009, MRIs of Mr. Parfait's cervical spine and lumbar spine were performed.  These tests showed bulging discs at C3-4 and remarkable

---

[23]     Rec. Doc. 5-1 at 177.

[24]     Rec. Doc. 5-1 at 198-199.

degenerative changes in the lumbar spine with disc dessication and severe erosive changes at L5-S1 in the endplates.[25]

On December 29, 2009, Mr. Parfait was seen by Dr. Randy Richter in the primary care clinic at the LSU hospital in Shreveport.  He complained of constant neck pain and a pulling pain in his mid back that began in October 2009, which he stated was worsened by sleeping and managed with medication.  He was noted to have a decreased range of motion in both his neck and his back.  However, the straight leg raise test was negative, there was no paraspinous spasm, and his reflexes and sensations were normal.  The diagnoses were degenerative disc disease of the lumbrosacral spine and degeneration of cervical intervertebral disc.  He was referred to the neurosurgical clinic.[26]  The record contains no indication, however, that Mr. Parfait was ever seen by a neurosurgeon.

On February 2, 2010, Mr. Parfait saw internist Andrew F. Clarke, M.D.[27]  Mr. Parfait complained of pain in his neck, back, and legs, and occasional numbness in his legs.  He explained that his symptoms are more pronounced in his right leg due to an arterial injury from a prior gunshot wound to the right thigh.  He also told Dr.

---

[25]     Rec. Doc. 5-1 at 195-196.

[26]     Rec. Doc. 5-1 at 190-191.

[27]     Rec. Doc. 5-1 at 210-213.

Clarke that his current prescription regimen "works very well for him" but that he needed a primary care physician to help him control his pain as he undergoes a work-up at the LSU Hospital neurosurgery clinic.  Dr. Clarke's assessment was that Mr. Parfait has chronic pain and anxiety.   Dr. Clarke also treated Mr. Parfait for hyperlipidemia, elevated blood pressure, asthma, and hemorrhoids.  His medications included Lorazepam, Lortab, Mobic, Prednisone, Proair HFA, Proctozone, Soma, and Zocor.

Mr. Parfait followed-up with Dr. Clarke on March 1, 2010.[28]  Dr. Clarke diagnosed Mr. Parfait with chronic pain syndrome.  His notes also indicate that he reviewed the MRI, doubts that Mr. Parfait is a candidate for further surgery, but suggested that epidural steroids might be helpful.  The record contains no indication that epidural steroids were ever administered.  A diagnosis of dyspepsia was added.

On May 14, 2010, Mr. Parfait was examined by Dr. Kenneth A. Ritter, Jr., an internist, at the request of Disability Determination Services.[29]   Mr. Parfait complained of chronic low back pain since October 2009 and chronic neck pain. More particularly, he stated that, in the past year, his right leg had given out three times and caused him to fall or almost fall.  He also stated that the same thing

---

[28]     Rec. Doc. 5-1 at 207-208.

[29]     Rec. Doc. 5-1 at 225-229.

happened with his left leg once.  He further stated that the toes on his right foot are sometimes numb.  Dr. Ritter's examination showed that Mr. Parfait had a 25-35% decrease in the range of motion in his neck, a normal gait and station, negative straight leg raises bilaterally, intact deep tendon reflexes, normal strength, and normal sensation.  Dr. Ritter also reviewed medical records sent to him in connection with the examination.  Dr. Ritter prepared a medical assessment of ability to do work-related activities, in which he found that Mr. Parfait's pain complaints have no effect on his ability to walk, stand, or sit.

On August 17, 2010, Mr. Parfait underwent a nerve conduction study at the LSU Health Sciences Center in Shreveport.  The study showed evidence of right peroneal neuropathy, which the physician interpreting the study stated might be the result of the gunshot wound.  The study also showed evidence of chronic denervation in distal leg muscles with common L5, S1 innervation, and no evidence of active problems related to lumbrosacral radiculopathy.

In February 2011, Mr. Parfait was seen at University Medical Center with complaints of hoarseness and difficulty swallowing.[30]

---

[30]     Rec. Doc. 5-1 at 262-266.

On March 15, 2011, Mr. Parfait presented at the University Medical Center emergency department complaining of low back pain and throat pain.[31]  He was given a Toradol injection.  He was also seen in the ENT clinic with regard to his throat complaints.[32]

On April 5, 2011, Mr. Parfait was seen at the University Medical Center speech pathology department and diagnosed with muscle tension dysphonia.[33]

On April 26, 2011, Mr. Parfait attempted to take his own life with an overdose of prescription medication including Soma and Lortab.[34]  The history he provided indicated that he had recently separated from his wife.  He was hospitalized at Abbeville General Hospital until May 2, 2011.  He was diagnosed with major depression – single episode, without psychotic features, and alcohol abuse.[35]  It was also noted that he has a history of back injury with chronic pain and hypertension.

---

[31]     Rec. Doc. 5-1 at 247.

[32]     Rec. Doc. 5-1 at 260.

[33]     Rec. Doc. 5-1a t 243-246.

[34]     Rec. Doc. 5-1 at 267-348.

[35]     Rec. Doc. 5-1 at 314.

At the time of discharge, his GAF score was 45, which indicates serious symptoms, including but not limited to suicidal ideation.[36]

## ASSIGNMENT OF ERRORS

Mr. Parfait contends that the Commissioner erred in finding him not disabled. More particularly, he contends that the ALJ disregarded his chronic pain and failed to properly articulate his reasons for doing so.

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to determining whether the decision was supported by substantial evidence and whether the proper legal standards were applied in reaching the decision.[37]  If the Commissioner's findings are supported by substantial evidence, they must be affirmed.[38]  Substantial

---

[36]     The Global Assessment of Functioning or GAF score is based on a numeric scale (0 to 100, with 100 indicating no symptoms) used by mental health clinicians and physicians to rate subjectively the social, occupational, and psychological functioning of adults.  American Psychiatric Ass'n Diagnostic and Statistical Manual of Mental Disorders at 30-31 (4th ed. 1994) ("DSM–IV").  A GAF score of 41 to 50 indicates serious symptoms such as suicidal ideation or any serious impairment in social, occupational, or school functioning.  DSM–IV at 32.

[37]     *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001); *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000).

[38]     *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

-10-

evidence is more than a mere scintilla and less than a preponderance.[39]  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[40]   Finding substantial evidence requires scrutiny of the entire record as a whole.[41]  In applying this standard, the court may not re-weigh the evidence or substitute its judgment for that of the Commissioner.[42]

A claimant seeking Social Security benefits bears the burden of proving that he or she is disabled.[43]  Disability is defined in the Social Security regulations as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[44]   Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit.[45]

---

[39]      *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[40]      *Boyd v. Apfel,* 239 F.3d at 704.

[41]      *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

[42]      *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135.

[43]      *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005); *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992); *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990); *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987).

[44]      42 U.S.C. § 423(d)(1)(A).

[45]      20 C.F.R. § 404.1572(a)-(b).

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled.  At step one, an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings. At step two, an individual who does not have a severe impairment will not be found disabled.  At step three, an individual who meets or equals an impairment listed in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1 will be considered disabled without consideration of vocational factors.  If an individual is capable of performing the work he has done in the past, a finding of not disabled must be made at step four. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if the claimant can perform any other work at step five.[46]

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[47] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the

---

[46]    *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991), summarizing 20 C.F.R. § 404.1520(b)-(f).  See, also, *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

[47]    20 C.F.R. § 404.1520(a)(4).

claimant's record.[48]  The claimant's residual functional capacity is used at the fourth step to determine if the claimant can still do his past relevant work, and is used at the fifth step to determine whether the claimant can adjust to any other type of work.[49]

The claimant bears the burden of proof on the first four steps.[50]  At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[51]  This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[52]  If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[53]  If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[54]

---

[48]     20 C.F.R. § 404.1545(a)(1).

[49]     20 C.F.R. § 404.1520(e).

[50]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[51]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[52]     *Fraga v. Bowen*, 810 F.2d at 1304.

[53]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[54]     *Anthony v. Sullivan*, 954 F.2d at 293, citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).  See, also, 20 C.F.R. § 404.1520(a)(4).

In this case, the Commissioner found, at step one, that Mr. Parfait has not engaged in substantial gainful activity since his alleged disability onset date of October 21, 2009.[55]  That finding is supported by evidence in the record.

At step two, the ALJ found that Mr. Parfait has the following severe impairments: dysphagia, hypertension, hyperlipidemia, and chronic pain syndrome.[56] This finding is also supported by evidence in the record.

At step three, the ALJ found that Mr. Parfait does not have an impairment or a combination of impairments that meets or medically equals a listed impairment.[57] Mr. Parfait does not argue that this finding was incorrect.

The ALJ then found that Mr. Parfait retains the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b).[58]  At step four, the ALJ found that Mr. Parfait is unable to perform his last relevant work.[59]  The ALJ found, however, that transferability of job skills is not material because using the Medical-Vocational Rules as a framework supports a finding that Mr. Parfait is not disabled

---

[55]     Rec. Doc. 5-1 at 16.

[56]     Rec. Doc. 3-1 at 18.

[57]     Rec. Doc. 5-1 at 18.

[58]     Rec. Doc. 5-1 at 19.

[59]     Rec. Doc. 5-1 at 19.

regardless of whether he has transferable job skills.[60]  At step five, the ALJ found that there are jobs in significant numbers in the national economy that Mr. Parfait can perform.  The ALJ then concluded that Mr. Parfait was not disabled from October 21, 2009 through the date of the decision.[61]

Mr. Parfait argues that the ALJ's conclusion that he is not disabled is erroneous because the ALJ failed to properly evaluate his pain complaints.

## DISCUSSION

Mr. Parfait's only assignment of error has to do with his pain complaints.  He argues that the ALJ disregarded his complaints of chronic pain then failed to articulate, in his ruling, why he did so.

Pain can constitute a disabling impairment,[62] but only when it is constant, unremitting, and wholly unresponsive to therapeutic treatment.[63]   Furthermore, subjective complaints, such as pain complaints, must be corroborated by objective

---

[60]     Rec. Doc. 5-1 at 19.

[61]     Rec. Doc. 5-1 at 20.

[62]     *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Cook v. Heckler*, 750 F.2d 391, 395 (5th Cir. 1985).

[63]     *Falco v. Shalala,* 27 F.3d at 163; *Selders v. Sullivan*, 914 F.2d at 618-19.

medical evidence.[64]   Unremitting pain sometimes results in observable signs such as drawn features, expressions of suffering, significant weight loss, and poor overall health,[65] none of which are noted in Mr. Parfait's medical records.   While an ALJ must take into account a claimant's subjective allegations of pain in determining residual functional capacity, the claimant must produce objective medical evidence of a condition that reasonably could be expected to produce the level of pain alleged.[66]   The mere existence of pain does not automatically create grounds for disability, and subjective evidence of pain does not take precedence over conflicting medical evidence.[67]   The absence of objective factors can justify the conclusion that a witness lacks credibility.[68]   Therefore, the Fifth Circuit has held that "[t]he ALJ 'must consider subjective evidence of pain as testified to by the claimant; failure to give consideration to the subjective evidence of pain and disability as testified to by the plaintiff is reversible error."[69]

---

[64]     *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).

[65]     *Chaney v. Califano*, 588 F.2d 958, 960 (5th Cir. 1979).

[66]     *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989).

[67]     *Harper v. Sullivan*, 887 F.2d at 96.

[68]     *Dominguez v. Astrue*, 286 Fed. App'x 182, 187 (5th Cir. 2008), citing *Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir. 1988) (*per curiam*).

[69]     *Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th 1981).

Here, the ALJ expressly stated that he based his decision on all of Mr. Parfait's symptoms; he reviewed the treatment that Mr. Parfait has received and his continued pain complaints; and he found that chronic pain syndrome is one of Mr. Parfait's severe impairments.  Because he found that Mr. Parfait's chronic pain syndrome is a severe impairment, the ALJ clearly did not disregard Mr. Parfait's pain complaints.

The record indicates that Mr. Parfait complained of back pain before his surgery in 1987 and began to complain of back and neck pain again starting in October 2009.  The record contains no evidence establishing pain complaints during the intervening time period and no evidence of treatment for his neck or back between 1987 and 2009.  The pain that Mr. Parfait was complaining of during the time period from 2009 through 2011 might be attributable to the 1987 injury, to his scoliosis, to a degenerative condition of the spine, or to the injury allegedly sustained in October 2009, all of which are documented in the record.  Regardless of the source of pain, however, Mr. Parfait's doctors treated him conservatively by prescribing pain medication.

The record contains a recommendation that Mr. Parfait consult a neurosurgeon, but there is no evidence that he ever did so.  Dr. Clarke opined that Mr. Parfait likely was not a candidate for further surgery but might benefit from epidural steroids.  But the record contains no evidence that any such treatment was ever provided.  Mr.

Parfait testified at the hearing that he uses a cane and a back brace, but there is no evidence in the record that either of these devices were prescribed or recommended by a doctor.

When Mr. Parfait was examined in the ER on November 17, 2009, he stated that Lortab and Soma ease his pain somewhat.  When he saw Dr. Richter in Shreveport on December 29, 2009, he reported that his pain was constant but he also stated inconsistently that his pain is worsened with sleeping and managed with medication.  When Mr. Parfait sought to establish a doctor-patient relationship with Dr. Clarke, he told Dr. Clarke that his then-current prescription regimen was working very well for him.  At his second visit with Dr. Clarke, Mr. Parfait indicated that the medications prescribed by Dr. Clarke were helping to relieve his pain, and he signed a formal pain management contract.  When Mr. Parfait saw Dr. Ritter for a consultation, he appeared in no acute distress, was able to get up and down from a chair and the examination table quickly and without difficulty, he had a normal gait, and he had negative straight-leg raises.  At the nerve conduction study, it was noted that he showed "questionable full voluntary effort."  At the hearing, Mr. Parfait testified that his pain medication helps somewhat although he needs assistance with some tasks, has been depressed because he can no longer do all of the things he used

to do, and worries about falling because of occasional numbness in his right leg.  The ALJ noted this testimony in his ruling.

There is an objective physical basis for Mr. Parfait's pain complaints, which the ALJ discussed in his ruling.  The ALJ also noted Mr. Parfait's pain complaints and the fact that his own testimony at the hearing and Dr. Clarke's records both indicate that his pain is improved to some extent by medication.  More specifically, Dr. Clarke's second treatment note says that Mr. Parfait "is getting fairly good relief of his discomfort from the medications we are prescribing."[70]

The mere existence of pain is not an automatic ground for obtaining disability benefits.[71]  A claimant's symptoms, including pain, will be determined to diminish a claimant's capacity for basic work activities to the extent that the claimant's alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence.[72]  Subjective complaints of pain must be corroborated by objective medical evidence.[73]  In this case, it is clear that there is a valid objective basis for Mr. Parfait's pain.  But pain is

---

[70]     Rec. Doc. 5-1 at 207.

[71]     *Nugent v. Astrue*, 278 Fed. App'x 423, 427 (5th Cir. 2008); *Hames v. Heckler*, 707 F.2d 162, 166 (5th Cir. 1983).

[72]     20 C.F.R. § 404.1529(c)(4).

[73]     *Chambliss v. Massanari*, 269 F.3d at 522.

a disabling condition only when it is constant, unremitting, and wholly unresponsive to therapeutic treatment.[74]   Mr. Parfait's pain does not fit in that category. Furthermore, an impairment that can be controlled or remedied by medication or therapy cannot serve as a basis for finding disability.[75]   Since Mr. Parfait obtains some relief from his chronic pain with prescription medications, his pain is not disabling.

Finally, the evaluation of a Social Security claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled,[76] and the ALJ's decision on the severity of pain is entitled to considerable judicial deference.[77]   Such a credibility determination is within the province of the ALJ.[78]   Therefore, the law requires the

---

[74]    *Nugent v. Astrue*, 278 Fed. App'x at 427; *Chambliss v. Massanari*, 269 F.3d at 522.

[75]    See *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988); *Johnson v. Sullivan*, 894 F.2d 863, 686 (5th Cir. 1990).

[76]    *Chambliss v. Massanari*, 269 F.3d at 522; *Loza v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983).

[77]    *Chambliss v. Massanari*, 269 F.3d at 522; *James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986); *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991).

[78]    *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991).

ALJ to make affirmative findings regarding a claimant's subjective complaints and to articulate his reasons for rejecting any subjective complaints.[79]

In this case, the ALJ noted that, in considering Mr. Parfait's symptoms, he is required to, first, determine whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce his pain and other symptoms and, second, evaluate the intensity, persistence, and limiting effects of Mr. Parfait's symptoms to determine the extent to which they limit his ability to do basic work activities.[80]  This is an accurate statement of the applicable legal standard.[81]

In applying this standard, the ALJ concluded that Mr. Parfait's medically determinable impairments could reasonably be expected to produce his alleged symptoms.[82]  He then found that Mr. Parfait's statements concerning the intensity, persistence, and limiting effects of his symptoms are not credible to the extent that they are inconsistent with the residual functional capacity assessment,[83] primarily

---

[79]     *Falco v. Shalala*, 27 F.3d at 163-64.

[80]     Rec. Doc. 5-1 at 17.

[81]     20 C.F.R. § 404.1529.

[82]     Rec. Doc. 5-1 at 18.

[83]     Rec. Doc. 5-1 at 18.

because "his pain is noted to be improved with current medication."[84]   Additionally,

Dr. Ritter found Mr. Parfait capable of performing light duty work, and the record

contains no contrary functional analysis.   No doctor who examined Mr. Parfait has

determined that he is unable to work.   An ALJ may discount a claimant's subjective

complaints of pain if he determines that they are inconsistent with other evidence in

the record.[85]

Neither the fact that he experiences pain[86] nor the fact that he takes medication

for pain on a daily basis establishes that his pain is disabling.   To the contrary, if

medication relieves pain to a mild or even a moderate level, then that pain does not

render a claimant disabled.[87]   Even the fact that working may cause a claimant pain

or discomfort does not mandate a finding of disability.[88]   Instead, what must be

determined is whether substantial evidence indicates that a claimant can work despite

being in pain or discomfort.[89]

---

[84]     Rec. Doc. 5-1 at 18.

[85]     *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003) (citing *Wren v. Sullivan*, 925 F.2d at 128.

[86]     *Harper v. Sullivan*, 887 F.2d at 96.

[87]     See, *Richardson v. Bowen*, 807 F.2d 444, 448 (5th Cir. 1987).

[88]     *Hames v. Heckler*, 707 F.2d at 166.

[89]     *Chambliss v. Massanari*, 269 F.3d at 522.   See, also, *Johnson v. Heckler*, 767 F.2d 180, 182 (5th Cir. 1985).

The ALJ set forth, in his written decision, a clear indication of the basis for his credibility choices concerning Mr. Parfait's complaints.  Because the ALJ's choices are not unreasonable, his finding that Mr. Parfait is capable of performing light work was proper.  There is substantial evidence in the record to support the ALJ's determination that Mr. Parfait's pain does not render him disabled, and the undersigned finds that the ALJ properly evaluated Mr. Parfait's pain complaints.  Accordingly, the Commissioner's ruling should be affirmed.

### CONCLUSION AND RECOMMENDATION

For the reasons explained above, the undersigned finds that the Commissioner's ruling that Mr. Parfait is not disabled is supported by substantial evidence and was reached by application of the proper legal standards.  Accordingly,

**IT IS RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and this matter be **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after

receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 19th day of September 2013.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE